**KEOGH LAW OFFICE**
301 Frank H. Cushing Way, Apt. 801
Tamuning, Guam 96913
Phone: (671) 472-6895
Mobile: (671) 777-6895
Email: rlk@guam.net

Attorneys for Plaintiff

IN THE DISTRICT COURT OF GUAM

ALEXANDER ALLEN, by and
through his Guardian Ad Litem
SCOTT ALLEN,

        Plaintiff,

  v.

P.H.R. MICRONESIA, INC., dba
HYATT REGENCY GUAM HOTEL and
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA,

        Defendants.

CASE NO. 1:21-cv-00008

# MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM AGAINST SCOTT ALLEN [F.R.CIV.P. RULES 12(b)(2) and 12(b)(6)]

TABLE OF CONTENTS

                                                              Page

I.    INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . 1

II.   RELEVANT PROCEDURAL BACKGROUND.. . . . . . . . . . . . . 1

III.  LEGAL STANDARD.. . . . . . . . . . . . . . . . . . . . . 2

IV.   ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . 4

      A.   Defendants' counterclaim is based
           on a fatal error. . . . . . . . . . . . . . . . . . 4

      B.   The court lacks personal jurisdiction
           over Scott Allen... . . . . . . . . . . . . . . . . 5

      C.   Negligent parental supervision is not
           an actionable tort. . . . . . . . . . . . . . . . . 6

      D.   The doctrine of parental immunity is a bar
           to claims of negligent supervision. . . . . . . . . 9

      E.   Defendants have no basis for claiming
           contribution from Scott Allen.. . . . . . . . . . . 17

V.    CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . 19

ii

**TABLE OF AUTHORITIES**

**<u>Cases</u>**                                                                                    **<u>Page(s)</u>**

*Advanced Cardiovascular Sys., Inc. v.*
*Scimed Life Sys., Inc.*
988 F.2d 1157 (Fed. Cir. 1993). . . . . . . . . . . . . . . 3

*Aetna Life Insurance Company v. Alla*
*Medical Services, Inc.*
855 F.2d 1470 (9th Cir. 1988). . . . . . . . . . . . . . . . 3

*Allen v. Zimmer Holdings, Inc.*
2015 WL 6637232 (D. Nev. 2015). . . . . . . . . . . . . . . 3

*American Association of Naturopathic*
*Physicians v. Hayhurst*
227 F.3d 1104 (9th Cir.2000). . . . . . . . . . . . . . . . 3

*Ashcroft v. Iqbal*
556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . 2

*Au v. Tsang Bros. Corp.*
2017 WL 606515 (D. Guam 2017). . . . . . . . . . . . . . . . 7

*Beddingfield v. Linam*
127 So. 3d 1178 (Sup. Ct. Ala. 2013). . . . . . . . . . . . 8

*Brunner v. Hutchinson Div., Lear-Siegler, Inc.*
770 F. Supp. 517 (D.S.D. 1991). . . . . . . . . . . . . . . 8

*Buono v. Scalia*
179 N.J. 131 (Sup. Ct. N.J. 2004). . . . . . . . . . . 13, 14

*Crotta v. Home Depot, Inc.*
249 Conn. 634 (Sup. Ct. Conn. 1999). . . . . . . . . . 12, 18

*Duensing by Duensing v. Tripp*
596 F. Supp. 389 (S.D. Ill. 1984). . . . . . . . . . . . . . 7

*Estate of Elkins v. Pelayo*
2020 WL 977931 (E.D.Cal. 2020). . . . . . . . . . . . . . . 4

*Fed. Trade Comm'n v. Noland*
2020 WL 6290388 (D. Ariz.). . . . . . . . . . . . . . . . . 5

*Foldi v. Jeffries*
93 N.J. 533 (Sup. Ct. N.J. 1983). . . . . . . . . . . 10, 11

*GIA-GMI, LLC v. Michener*
2007 WL 1655614 (N.D. Cal. 2007). . . . . . . . . . . . . . 4

*Goller v. White*
20 Wis. 2d 402, 122 N.W.2d 193 (1963). . . . . . . . . . . 10

iii

**Cases**                                                              **Page(s)**

*Harris v. Wal-Mart Stores, Inc.*
630 F.Supp.2d 954 (C.D. Ill. 2009) . . . . . . . . . . . . . . 15

*Hewellette v. George*
68 Miss. 703, 9 So. 885 (Sup. Ct. Miss. 1891) . . . . . . . . 9

*Holodook v. Spencer*
36 N.Y.2d 35 (Ct. App. N.Y. 1974) . . . . . . . . . . . . . . . 7

*Horn By and Through Kirsch v. Price*
255 N.J. Super. 350 (App. Div. 1992) . . . . . . . . . . . . . 12

*Hyde-Rhodes v. Crowley*
2020 WL 5879100 (D. Idaho) . . . . . . . . . . . . . . . . . . 5

*In re Christina B.*
19 Cal.App.4th 1441 (E.D. Cal. 1993) . . . . . . . . . . . . . 4

*In re: Western States Wholesale Natural*
*Gas Antitrust Litigation v. Dynegy Inc.*
2008 WL 11388668 (D. Nev.) . . . . . . . . . . . . . . . . . . 3

*Lampe v. Xouth, Inc.*
952 F.2d 697 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . 2

*Lindora, LLC v. Isagenix Int'l, LLC.*
198 F. Supp. 3d 1127 (S.D. Cal. 2016) . . . . . . . . . . . . . 2

*Linglong Americas Inc. v. Get it on Wheels, Inc.*
2018 WL 288014 at (E.D. Cal. 2018) . . . . . . . . . . . . . . 4

*Lujan v. Est. of Rosario*
2016 Guam 28 . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Martinez v. Kaz USA, Inc.*
183 A.D.3d 720, 121 N.Y.S.3d 880
(Sup. Ct. App. Div. 2020) . . . . . . . . . . . . . . . . . . . 7

*Nolasco v. Malcom*
307 Neb. 309,(Sup. Ct. Neb. 2020) . . . . . . . . . . . . . . 16

*Omni Capital Int'l. Ltd. v. Rudolf Wolff & Co., Ltd.*
484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) . . . . . . . 2

*Parsons v. Wham-O, Inc.*
150 A.D.2d 435, 541 N.Y.S.2d 44
(Sup. Ct. App. Div. 1989) . . . . . . . . . . . . . . . . . . . 7

*Ruhrgas AG v. Marathon Oil Co.*
526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) . . . . . 2

iv

**Cases**                                                          **Page(s)**

*Sias ex rel. Mabry v. Wal-Mart Stores, Inc.*
137 F. Supp. 2d 699 (S.D. W.Va. 2001).. . . . . . . . . . . .  13

*Smelser v. Paul*
188 Wash. 2d 648 (Sup. Ct. Wash. 2017). . . . . . . . . . .  8, 9

*Tate v. D.B.*
2014 WL 545941 (D. Me. 2014). . . . . . . . . . . . . . . . .  8

*Zellmer v. Zellmer*
164 Wash.2d 147, (Sup. Ct. Wash. 2008). . . . . . . . . . .  14


**Treatises**

Restatement (Second) of Torts §895G (1979). . . . . . . . . .  10

**Rules and Statutes**

F.R.Civ.P. 4. . . . . . . . . . . . . . . . . . . . . . . .  5, 6

F.R.Civ.P. 12(b). . . . . . . . . . . . . . . . . . . . . . . . 3

F.R.Civ.P. 12(b)(2). . . . . . . . . . . . . . . . . . . 1, 2, 3

F.R.Civ.P. 12(b)(6). . . . . . . . . . . . . . . . . . . 1, 2, 3

F.R.Civ.P. 12(g). . . . . . . . . . . . . . . . . . . . . . . . 3

F.R.Civ.P. 12(g)(2). . . . . . . . . . . . . . . . . . . . . . . 3

F.R.Civ.P. 13.. . . . . . . . . . . . . . . . . . . . . . .  4, 5

F.R.Civ.P. 13(a). . . . . . . . . . . . . . . . . . . . . . . . 4

F.R.Civ.P. 13(b). . . . . . . . . . . . . . . . . . . . . . . . 4

F.R.Civ.P. 14.. . . . . . . . . . . . . . . . . . . . . . . . . 5

5 G.C.A. §35316(i). . . . . . . . . . . . . . . . . . . . . . . 9

7 G.C.A. §24601, et. seq... . . . . . . . . . . . . . . . . .  17

7 G.C.A. §24603.. . . . . . . . . . . . . . . . . . . . . . .  17

7 G.C.A. §39310(d). . . . . . . . . . . . . . . . . . . . . . . 9

v

## I.  INTRODUCTION

Scott Allen, by special appearance, respectfully moves the court pursuant to F.R.Civ.P. 12(b) for an order dismissing defendants' counterclaim for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Defendants' counterclaim is improperly brought against a nonparty and has no legal basis. Hence, it should be dismissed.

## II.  RELEVANT PROCEDURAL BACKGROUND

Plaintiff Alexander Allen ("Alex") filed the present lawsuit against defendants on January 15, 2021 for the traumatic amputation of his left hand small finger at the distal interphalangeal joint while going down a water slide at the Hyatt Regency Guam Hotel ("Hyatt")(ECF No. 1). As Alex is a minor, simultaneous with the filing of his Complaint, he filed a Petition For Appointment of Guardian Ad Litem (ECF No. 2). On January 19, 2021, the court granted his petition and appointed his father, Scott Allen, as his Guardian Ad Litem (ECF No. 3). On February 11, 2021 plaintiff filed his First Amended Complaint against defendants for the Hyatt's negligent design, installation, maintenance and operation of its water slide and its immediately surrounding premises (ECF No. 8). On June 14, 2021, defendants filed their answer and counterclaimed against Scott Allen for negligent supervision of Alex and thence sought contribution for damages in the event that defendants are found to be liable for the injury to Alex (ECF No. 23, pp.5-7).

1

### III. LEGAL STANDARD

Pursuant to Rule 12(b)(2), a court may dismiss a complaint for lack of personal jurisdiction. Personal jurisdiction is an essential element of the jurisdiction of a district court without which the court is powerless to proceed to an adjudication. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Proper service of the summons and complaint is required for the court to have personal jurisdiction over a defendant. *Omni Capital Int'l. Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") "A federal district court acquires personal jurisdiction over a defendant when the plaintiff serves the defendant with the complaint in a manner specified by Rule 4 of the Federal Rules of Civil Procedure." *Lampe v. Xouth, Inc.*, 952 F.2d 697, 701 (3d Cir.1991). The party opposing a Rule 12(b)(2) motion bears the burden of establishing that jurisdiction is proper. See, *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1135 (S.D. Cal. 2016).

Under Rule 12(b)(6) the court may dismiss a complaint for failure to state a claim upon which relief can be granted. A plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the pleaded factual content

2

allows the Court to draw the reasonable inference, based on the Court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *Allen v. Zimmer Holdings, Inc.*, 2015 WL 6637232 at *1 (D. Nev. 2015). The purpose of the rule is to permit the court to use its resources most efficiently by eliminating legally fatal claims. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

Even if the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is dispositive here, Rule 12(b) encourages the inclusion of all available defenses in its subsections (1) to (7) at this stage. It states that "[n]o defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." This allows the court to dispose of all threshold jurisdictional matters before it. Rule 12(g)(2) also requires the consolidation of all Rule 12(b) defenses available into one motion. "Rule 12(g)'s purpose is to require a defendant to bring forward all the specified defenses it then has to permit timely and efficient resolution of all such defenses and avoid dilatory and wasteful piecemeal attacks on a complaint through successive motions to dismiss." *In re: Western States Wholesale Natural Gas Antitrust Litigation v. Dynegy Inc.*, 2008 WL 11388668 at *3 (D. Nev.) The Ninth Circuit enforces Rule 12(g) strictly. *American Association of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106-07 (9th Cir.2000); *Aetna Life Insurance Company v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988).

3

## IV. ARGUMENT

### A.  __Defendants' counterclaim is based on a fatal error__.

Counterclaims are governed by Rule 13. A counterclaim may be compulsory under Rule 13(a) or permissive pursuant to Rule 13(b). In either case, the rules require that it must be brought by the pleader against an opposing party. "The plain meaning of 'opposing party' is a party to the lawsuit - that is, a named party who asserted a claim against the counterclaimants." *Linglong Americas Inc. v. Get it on Wheels, Inc.*, 2018 WL 288014 at *3 (E.D. Cal. 2018) citing *GIA-GMI, LLC v. Michener*, 2007 WL 1655614 at *4 (N.D. Cal. 2007). Here, defendants' only opposing party is Alex.

Defendants have erroneously conflated Scott Allen, the Guardian ad Litem of plaintiff, with being ***the plaintiff*** in this case. The counterclaim's heading is "COUNTERCLAIM AGAINST PLAINTIFF SCOTT ALLEN." Its allegations are replete with references to Scott Allen as "Plaintiff and Counterclaim Defendant Scott Allen," "Plaintiff Scott Allen" or "Plaintiff."

Truth is, Scott Allen is not the plaintiff but rather the guardian ad litem of the plaintiff. Paragraph 3 of plaintiff's First Amended Complaint clearly states that the plaintiff is Alex and that "[h]e is represented herein by his father and Guardian Ad Litem Scott Allen" ("Scott")(ECF No. 8). "A guardian ad litem is not a party to the action, but merely a party's representative, an officer of the court." *Estate of Elkins v. Pelayo*, 2020 WL 977931 at *6 (E.D.Cal. 2020), citing *In re Christina B.*, 19 Cal.App.4th 1441, 1453 (1993).

4

Under Rule 13, it is impermissible to assert counterclaims solely against non-parties. *Fed. Trade Comm'n v. Noland*, 2020 WL 6290388 at *4 (D. Ariz.) As Scott is not a party here, defendants' counterclaim is improperly brought against him. To properly bring Scott in as a party to this lawsuit defendants must have complied with the procedure outlined by Rule 14 which allows a defendant to implead a third party defendant by proper service of a summons and complaint. That said, doing so would be an exercise in futility as will be shown below.

**B.** **The court lacks personal jurisdiction over Scott Allen**.

As a general rule, service of process is the means by which a court obtains personal jurisdiction over a defendant. Scott's only appearance before the court is in his representative capacity as Guardian ad Litem of Alex. As such, the court has no personal jurisdiction over him. For the court to acquire personal jurisdiction over Scott, defendants must properly serve him with a summons and complaint in compliance with the requirements of Rules 4 and 14. "Proper service of process is a prerequisite to the Court's exercise of personal jurisdiction over a defendant." *Hyde-Rhodes v. Crowley*, 2020 WL 5879100 at *1 (D. Idaho). As there is nothing in the record to show that defendants have properly served Scott with a summons and complaint, the court must dismiss defendants' claim against him for lack of personal jurisdiction pursuant to Rule 12(b)(2).

5

## C. **Negligent parental supervision is not an actionable tort**.

Defendants' counterclaim does not contain sufficient factual allegations that would allow the court to draw a reasonable inference that Scott did anything as a father that would rise to the level of an actionable tort. Defendants allege that Scott owed a duty to Alex to reasonably supervise him and his other children while they were utilizing the subject waterslide; that Scott breached his duty to supervise by "lounging in an area located above the subject North River Side Pool and Waterslide" and was unable therefrom to maintain visual contact with Alex and his other children as they were using or misusing the subject pool and waterslide; and that such breach was the proximate cause or contributing proximate cause of the injuries sustained by Alex. Lounging in an area located above the waterslide where one's children are playing in a waterpark is very much within the norm of what parents ordinarily do when at a waterpark with their children. If failing to maintain visual contact with one's child or children as they play is to be considered an actionable tort of negligent supervision, then every parent could conceivably be hauled into court and made to account for their act of ordinary supervision with respect to their child or children should they be injured.

There are no laws on Guam that specifically create or define a parent's duty of supervision towards one's minor child. There are also no Guam Supreme Court cases that have dealt with or decided the issue of whether there is a legal duty of parental

6

supervision that can be breached and/or whether or not a parent's negligent supervision of a minor child is an actionable tort. When faced with matters of first impression, this court has held that its duty is to "predict how the highest state court would decide the issue" using decisions from other jurisdictions and other authority for guidance. *Au v. Tsang Bros. Corp.*, 2017 WL 606515 at *5 (D. Guam 2017).

In several states, a parent's negligent supervision of his or her child is not recognized as an actionable tort. See, *Holodook v. Spencer*, 36 N.Y.2d 35, 51 (Ct. App. 1974)("[W]e are not persuaded that a parent's failure to supervise his child is, or on balance should be, a tort actionable by the child"); and *Parsons v. Wham-O, Inc.*, 150 A.D.2d 435, 541 N.Y.S.2d 44, 45 (Sup. Ct. App. Div. 1989)("Negligent parental supervision involving a breach of a duty that exists because of the family relationship and specifically arises from the parent-child relationship is a legally nonexistent tort"). The holding in *Holodook* is still good law in New York and was recently reaffirmed by the New York Supreme Court just last year in *Martinez v. Kaz USA, Inc.*, 183 A.D.3d 720, 721, 121 N.Y.S.3d 880, 881 (Sup. Ct. App. Div. 2020)("There is no legally cognizable cause of action to recover damages for injuries suffered by a minor child against his or her parent for negligent supervision"). The same rule applies in Illinois, *Duensing by Duensing v. Tripp*, 596 F. Supp. 389, 392 (S.D. Ill. 1984)("[A]bsent the parental immunity, Illinois would not recognize a child's action against the parent for negligent

7

supervision."); in Alabama, *Beddingfield v. Linam*, 127 So. 3d 1178, 1189 (Sup. Ct. Ala. 2013)("We decline to extend our holdings in negligent-supervision cases to recognize a cause of action based on a parent's negligence or wantonness in supervising his or her own child."); in New Hampshire, *Tate v. D.B.,* 2014 WL 545941 at *10 (D. Maine 2014)(applying New Hampshire law)("The Supreme Court of New Hampshire has not formally recognized the tort of negligent supervision."); and in South Dakota, *Brunner v. Hutchinson Div., Lear-Siegler, Inc.*, 770 F. Supp. 517, 523 (D.S.D. 1991) ("South Dakota law does not recognize a third-party's claim against a parent based upon the parent's negligent supervision of the child.")

The Supreme Court of Washington had occasion to rule on this very issue as recently as 2017 in the case of *Smelser v. Paul*, 188 Wash.2d 648 (Sup. Ct. Wash. 2017). *Smelser* involved injuries to a two year old child who was run over by a car driven by the child's father's girlfriend while the child was playing with his father in his father's driveway. The jury found the father and the girlfriend to be equally at fault. The trial court refused to enter judgment against the father based on the parental immunity doctrine. The Court of Appeals affirmed. The issue raised on appeal brought by the minor child was whether, consistent with the parental immunity doctrine, a parent can be assigned fault based on negligent supervision. Before considering this issue the court stated:

"[A] preliminary issue that must be resolved is

8

whether a tort duty exists from which fault can be found for negligent parenting. The trial court and Court of Appeals failed to first determine whether a parent can be liable in tort for his or her child's injuries based on a theory of negligent supervision. While cases have described the principle as a form of "parental immunity," what the cases establish is that no tort liability or tort duty is actionable against a parent for negligent supervision. **Simply stated, it is not a tort to be a bad, or even neglectful, parent.**

Id., at 653-654 (emphasis added).

As seen in the cases cited above, courts have been unwilling to recognize negligent supervision by a parent as an actionable wrong. Hence, even if all the allegations enumerated in defendants' counterclaim are taken as true, Scott's actions do not amount to a tort that is actionable by Alex which would in turn entitle defendants to relief. Judged by the plausibility standard required by Rule 12(b)(6), defendants' counterclaim against Scott for negligent supervision of Alex falls short.

### D. **The doctrine of parental immunity is a bar to claims of negligent supervision**.

The defense of immunity based on the relationship of parent and child is acknowledged as being available on Guam. See 5 G.C.A. §35316(i)("The defense of immunity based on the relationship of husband and wife or parent and child does not apply in a proceeding under this Chapter;" and, 7 GCA § 39310(d)("a defense of immunity based on the relationship of husband and wife or parent and child may not be invoked in a proceeding under this Article.") By excluding the applicability of the intra-family immunity defense in those specific

9

instances, the Guam Legislature tacitly recognizes that parent-child immunity is available in other circumstances.

The doctrine of parent-child immunity generally precludes an unemancipated child from suing his or her parents for damages for personal injuries arising from negligence and vise versa. The Supreme Court of Mississippi was the first U.S. court to articulate this doctrine in *Hewellette v. George*, 68 Miss. 703, 9 So. 885 (Sup. Ct. Miss. 1891) where it was held that a parent was immune from liability to a minor child for false imprisonment in an insane asylum. Thereafter, several U.S. courts adopted this doctrine in a variety of circumstances.

The principle of parental immunity has been the subject of exhaustive treatment in law review articles, treatises and opinions of numerous courts. Through the years, the doctrine has evolved from absolute immunity to modified immunity to total abrogation altogether **except** in claims of ordinary negligence involving conduct related to parental authority, discretion, or decision-making in the supervision, care, and treatment of a minor child. See, *Goller v. White*, 20 Wis. 2d 402, 122 N.W.2d 193 (1963) and Restatement (Second) of Torts §895G (1979). A chronological review of more recent court decisions reveals that the doctrine of parental immunity continues to be upheld as a bar to tort claims of negligent parental supervision.

In 1983, in the case of *Foldi v. Jeffries*, 93 N.J. 533 (Sup. Ct. N.J. 1983), the Supreme Court of New Jersey performed an extensive review of the history of the doctrine of parental immunity. *Foldi* involved a 2 ½ year old child who was with her

10

mother in their front yard while the mother was gardening. Unbeknownst to her mother, the minor wandered out of the yard and over to a neighbor's residence two doors away. There, she was bitten on the face by the neighbor's dog. In finding that the doctrine of parental immunity applied as a bar to suit against a parent for simple negligence in supervision, the court, in a lengthy but critical passage noted:

There are certain areas of activities within the family sphere involving parental discipline, care, and control that should and must remain free from judicial intrusion. Parents should be free to determine how the physical, moral, emotional, and intellectual growth of their children can best be promoted. That is both their duty and their privilege. Indeed, every parent has a unique philosophy of the rearing of children. That philosophy is an outgrowth of the parent's own economic, educational, cultural, ethical, and religious background, all of which affect the parent's judgment on how his or her children should be prepared for the responsibilities of adulthood. Such philosophical considerations come directly to the fore in matters of parental supervision.

There is no recognized correct theory on how much freedom a parent should allow his or her children. Some parents believe that a child must be made self-reliant at an early age and accordingly give their children a great deal of independence. To outsiders, such independence may look like indifference or neglect. On the other hand, some parents believe that their children must be vigilantly monitored from infancy through adolescence. To outsiders, such vigilance and concern may appear to shelter the children from the world and to thwart their development.

As each parent is different, so is each child. There is no one ideal "formula" for how much supervision a child should receive at a given age. What may be perfectly safe to entrust to one five year old may be utterly dangerous in the hands of another child of the same age. This disparity often proves true even among siblings in the same household. The parent is clearly in the best position to know the limitations and

11

capabilities of his or her own children. These intangibles cannot be adequately conveyed within the formal atmosphere of a courtroom. Nor do we believe that a court or a jury can evaluate these highly subjective factors without somehow supplanting the parent's own individual philosophy.

Id. at 545-546.

The 1992 case of *Horn By and Through Kirsch v. Price*, 255 N.J. Super. 350 (App. Div. 1992) involved a 6 year old girl who was injured when, against her mother's specific instructions, she exited the family automobile while it was pulled over on the side of the road for attempted repair. In an action by the child against her mother the court found that the mother's actions of instructing her child to remain inside the vehicle, constituted parental supervision. The court further stated that even if the mother's supervision could somehow be considered negligent, her conduct did not rise to the level of willful or wanton misconduct such that parental immunity would not apply.

In 1999, the case of *Crotta v. Home Depot, Inc.*, 249 Conn. 634 (Sup. Ct. Conn. 1999) involved a child whose father had placed him in the cargo section of the shopping cart provided by Home Depot for use by its customers. While the child's father was crouched down examining an item of merchandise, the child fell from the shopping cart and struck his head on the concrete floor thereby sustaining serious physical injuries. The child sued Home Depot and the manufacturer of the shopping cart, Tote-Cart. The defendants brought a third party complaint against the child's father for negligent supervision seeking indemnification

12

or contribution. The Supreme Court of Connecticut held that (1) the doctrine of parental immunity operates to preclude the parent of a minor plaintiff from being joined as a third-party defendant for purposes of apportionment of liability or contribution for negligent supervision; and (2) since the doctrine of parental immunity barred the child's claim for negligent supervision, the store and the manufacturer of the shopping cart had no basis upon which to assert a common-law claim for indemnification against the parent.

In 2001, the case of *Sias ex rel. Mabry v. Wal-Mart Stores, Inc.*, 137 F. Supp. 2d 699 (S.D. W.Va. 2001) involved a child who together with her mother sued Wal-Mart for damages that resulted from the use of a bicycle purchased from Wal-Mart. The plaintiffs alleged that the accident was caused by a defect of the bicycle's training wheels or its negligent assembly by the store. The Store filed a counterclaim against the mother for negligent supervision of her child. The court held that the counterclaim was barred by the parental immunity doctrine. The court stated that the "real purpose behind the doctrine 'is simply to avoid undue judicial interference with parental discretion. The discharge of parental responsibilities...entails countless matters of personal, private choice. In the absence of culpability beyond ordinary negligence, those choices are not subject to review in court.'" Id. at 701.

In 2004, the case of *Buono v. Scalia*, 179 N.J. 131 (Sup. Ct. N.J. 2004) involved a minor pedestrian who was struck and injured by a minor bicyclist. The injured minor brought a

13

negligent supervision claim against the bicyclist's parents. The lower court granted summary judgment for the bicyclist and his parents and the pedestrian appealed. The Supreme Court of New Jersey held that the father's determination that his minor child could ride a bike within the confines of a neighborhood block party where parked cars were removed from the street and which was closed to traffic was a valid exercise of parental decision-making which gave rise to immunity, under the parental immunity doctrine, from a negligent supervision claim. Citing its decision in *Foldi*, the *Buono* court stated:

> That rationale, articulated by the unanimous Court in *Foldi* and cited at length elsewhere in this opinion, retains its currency for the narrow class of cases to which we have adverted, including the case before us. To reiterate our earlier stated belief, the conduct of each party here "falls within the realm of activities which partake of the everyday exigencies of regular household existence that [should be] exempted from simple negligence liability[.]" That belief is grounded in a judicial policy that seeks merely to define the limited circumstances under which parents can rear their children free "from scrutiny by judge or jury."

Id. at 144 (internal citations omitted).

In 2008, the case of *Zellmer v. Zellmer*, 164 Wash.2d 147 (Sup. Ct. Wash. 2008) involved the accidental death of a 3 year old girl who drowned in a backyard swimming pool while under the supervision of her stepfather. That day, the child, who ordinarily went to daycare, stayed home with her stepfather because she was sick. At around 5:00 p.m., her stepfather started a video for her to watch in her bedroom and then went

14

downstairs to build a fire. About an hour later, the stepfather realized that the child was no longer in her room and he noticed the sliding glass door leading to the backyard was open. He found the child floating in the swimming pool. The paramedics were able to resuscitate the child but she died in the hospital 2 days later. The trial court ruled the parental immunity doctrine shielded the stepfather from liability for negligence in connection with her death. The child's biological parents challenged that ruling. The Supreme Court of Washington reaffirmed that the doctrine of parental immunity precludes liability for negligent parental supervision except for a parent's wanton or willful failure to supervise a child. The court further held that the parental immunity doctrine shields a stepparent to the same extent as a biological or adoptive parent so long as the stepparent stands *in loco parentis* to the child.

In 2009, in *Harris v. Wal-Mart Stores, Inc.*, 630 F.Supp.2d 954 (C.D.Ill. 2009) a boy, while at Wal-Mart with his mother, accidentally suffered an eye injury as he was walking between a clothing rack and a shopping cart. His left eye was punctured by a four-cornered metal prong protruding from the clothing rack that was hidden by clothing hanging above it. The jury awarded damages to the boy and his parents but reduced the damage award by 45% due to the negligence attributable to the boy's mother. On appeal, the court held that the mother of the boy is entitled to parent-child immunity as to any claim by her child that she failed to properly supervise him and as such defendant was not

15

entitled to contribution from the mother.

The 2020 case of *Nolasco v. Malcom*, 307 Neb. 309, (Sup. Ct. Neb. 2020), involved a lawsuit against the estate of the deceased mother for the death of her daughter and injuries suffered by her son as a result of her negligent operation of a motor vehicle. The lower court granted summary judgment for the mother's estate stating that the claims were barred by the parental immunity doctrine. The daughter's estate and son appealed. The Supreme Court of Nebraska stated that its prior opinions developing, applying, and discussing the doctrine of parental immunity have involved allegations of negligence relating directly to the treatment or supervision of a child or ward by a parent or one standing in relation to a parent which are consistent with the expressed reasons for adopting a modified immunity rule in Nebraska: "to protect the proper exercise of parental authority, to recognize that parents are entitled to discretion in how they raise and discipline their children, and to protect against tort liability because of a legitimate parental decision." Id. at 328 (internal quotation marks removed). The court stated that it considered these justifications for the doctrine to be as valid today as when introduced into Nebraska law. The court held that there is no need to expressly modify the doctrine to exclude automobile negligence cases because claims of negligence in the operation of a motor vehicle rarely involve the exercise of parental authority or discretion in the supervision, care, and treatment of a child.

16

Defendants' counterclaim against Scott for lounging and failing to maintain visual contact with his children as they used, or allegedly misused, the waterslide nearby is well within the exercise of his parental authority and discretion. Even if Scott's actions amount to negligent supervision, not only is it not an actionable tort, it is also protected by the defense of immunity based on his father-son relationship with Alex which is available to him under Guam law. Defendants' counterclaim clearly fails to state a claim upon which relief can be granted.

**E. Defendants have no basis for claiming contribution from Scott Allen.**

Defendants' claim for contribution from Scott is governed by 7 G.C.A. §24601, et. seq., otherwise known as the Contribution Among Joint Tortfeasors Act. It provides the method in which apportionment of responsibility is made amongst joint tortfeasors. 7 GCA §24603 states that:

> "In determining the percentage shares of tortfeasors in the entire liability, their relative degrees of fault shall be considered by the trier of fact. A tortfeasor entitled to contribution shall recover from each remaining tortfeasor an amount which is based on the percentage of causal negligence attributable to each."

In a case interpreting this very statute, the Guam Supreme Court held that the Government who had been dismissed and no longer a party in the case cannot have any liability attributed to it. "By the terms of the apportionment statute, the Government is

not a "tortfeasor" or a "remaining tortfeasor" and cannot have liability apportioned to it." *Lujan v. Est. of Rosario*, 2016 Guam 28 at ¶80.

Defendants' claim for contribution from Scott therefore necessarily depends first upon a finding that Scott can be held liable as a tortfeasor to Alex. The *Crotta* court, having analyzed this same situation, determined that no contribution may be obtained from a parent of a minor in such an instance. It reasoned that:

> "As a general proposition, a tortfeasor compelled to discharge a liability for a tort cannot recover contribution from a joint tortfeasor whose participation therein gave the injured person no cause of action against him, since the element of common liability of both tortfeasors to the injured person, essential to the right of contribution, is lacking in such cases." 25 A.L.R.4th 1123, Joint Tortfeasor Contribution-Family §§ 2[a] (1983); 18 Am.Jur.2d, supra § 65. "The contribution defendant must be a tortfeasor, and originally liable to the plaintiff. If there was never any such liability, as where the contribution defendant has the defense of family immunity ... then there is no liability for contribution." W. Prosser & W. Keeton, Torts (5th Ed.1984) § 50, pp. 339–40; 18 C.J.S., Contribution § 29 (1990) (recognizing that third party may not recover contribution against parent where child has no cause of action against parent for negligent supervision).

*Crotta v. Home Depot, Inc.*, supra at 640-41. Since Alex cannot make a claim against his own father for negligent supervision; and, because Scott cannot be held liable to Alex under the doctrine of parental immunity, defendants have no basis for bringing a third party claim for contribution against Scott.

18

Stated differently, what Alex cannot do directly, defendants cannot be allowed to do indirectly. Clearly a Rule 14 motion to bring Scott in as a third party defendant would be futile.

## V. CONCLUSION

Defendants' counterclaim is improperly brought against Scott who is not a party to this lawsuit. There is nothing in the record of this case that would show that the court has personal jurisdiction over Scott. Even if defendants complied with the requirements of Rule 4 and 14 to bring him in as a third party defendant, it is evident from the allegations in their counterclaim that they do not have a claim against him upon which relief can be granted. Dismissal of defendants' claim against Scott is appropriate and should be granted.

Respectfully submitted,

**KEOGH LAW OFFICE**
Attorneys for Plaintiff

DATE: July 5, 2021          By: _/s/ Robert L. Keogh_
                                 **ROBERT L. KEOGH**

19